IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ERNEST JABLONSKY, dba<br>MONTANA BIG GAMES PURSUIT,<br>and JEFFREY PERLEWITZ,<br><br>Defendants. | CR17-17-H-CCL<br><br>OPINION & ORDER |

Defendant Ernest Jablonsky (Jablonsky) moves, through counsel, for early termination of probation. The United States opposes the motion. According to Jablonsky's counsel, Jablonsky's supervising probation officer does not oppose the motion. The Court has reviewed the record in this case and in *United States v. Jablonsky et. al*, CR 17-18-H-SEH (CR 17-18-H), and is prepared to rule on the pending motion.

**BACKGROUND**

On October 23, 2017, a Grand Jury returned two separate indictments charging Jablonsky and others with conspiring to commit federal offenses under 18 U.S.C. § 371 and underlying violations of the Lacey Act. The first indictment,

filed in the instant case, charged Jablonsky and his co-defendant, Jeffrey Perlewitz (Perlewitz) in Count I with having

> knowingly conspired and agreed with each other, and with other persons, both known and unknown to the Grand Jury, to illegally sell, purchase, and offer to sell and purchase wildlife with a market value of greater than $350, and to conceal such activity from the authorities by submitting false records, in violation of 16 U.S.C. § 3372(a), § 3372(c), § 3372(d), § 3373(d)(1)(B) and § 3373(d)(3)(A), all in violation of 18 U.S.C. § 371.

(Doc. 2).

Count II of the Indictment charged that Jablonsky "knowingly engaged in conduct involving the illegal sale and purchase, the offer to sell and purchase, and intent to sell and purchase, wildlife with a market value of greater than $350, in that he knowingly sold mountain lions by selling a guided hunt for mountain lions to Jeffrey Perlewitz in an area where he was not legally entitled to provide such services, all in violation of 16 U.S.C. § 3372(a)(1), § 3372(c), § 3373(d)(1)(B), and 18 U.S.C. § 2. Count III of the Indictment charged Perlewitz, at Jablonsky's direction, with having "knowingly submitted a Mountain Lion Harvest Form to a Montana Fish, Wildlife & Parks representative stating that the Perlewitz lion hunt was not outfitted, even though Perlewitz knew that statement to be false because Jablonsky was his outfitter and was paid $1,500 for the lion hunt, and Perlewitz further knew the lion had a market value of more than $350 and would be

transported in interstate commerce, all in violation of 16 U.S.C. § 3372(d)(2), § 3373(d)(3)(A)(ii), and 18 U.S.C. § 2. All of the charges filed against Jablonsky in the instant case arose from a hunting trip he outfitted in December of 2013.

The second indictment opened a second case, which was assigned to Judge Haddon as CR 17-18-H. Count I of CR 17- 18-H charged Jablonsky and James V. Day (Day), Richard Ceynar (Ceynar) and Mitch Theule (Theule) with having

> knowingly conspired and agreed with each other, and with other persons, both known and unknown to the Grand Jury, to sell, transport, receive and acquire mountain lions in interstate commerce in violation of Montana state hunting laws, and to conceal such hunts from the authorities by submitting false records, in violation of 16 U.S.C. §§ 3372(a), (c), and (d), § 3373(d)(1)(B) and (d)(3)(A), all in violation of 18 U.S.C. § 371.

(Doc. 4 in CR 17-18-H).

The other charges in the indictment filed in CR 17-18-H were directed at various defendants and charged various violations of the Lacey Act. On December 15, 2017, Day moved to change his plea to Count IV of the indictment pursuant to a plea agreement with the United States in exchange for the government's agreement to dismiss the conspiracy count against him. (Docs. 92 through 94 in CR 17-18-H). On December 18, 2017, Ceynar moved to enter a guilty plea "to a forthcoming Information charging a misdemeanor Lacey Act violation," (Doc. 98 in CR 17-18-H), and the United States filed a plea agreement

in which it agreed to dismiss the indictment against Ceynar in exchange for his guilty plea to the superseding information. (Doc. 97 in CR 17-18-H).

On December 21, 2017, the grand jury returned a four-count superseding indictment against Jablonsky and Theule in CR 17-18-H. (Doc. 126 in CR 17-18-H). The superseding indictment differed from the original indictment in that it no longer contained a separate count against Ceynar, who had agreed to plead to an information. Theule eventually entered a guilty plea to a superseding information charging him with a Class A misdemeanor. (*See* Docs. 211, 213 in CR 17-18-H).

On January 8, 2018, the undersigned denied motions to dismiss filed by Perlewitz and Jablonsky in the instant case. (Doc. 85). On February 12, 2018, Jablonsky filed an "Unopposed Motion to Withdraw Plea of Not Guilty to Count II and Request for Hearing Date." (Doc. 94). Jablonsky negotiated a plea agreement with the United States reserving his right to appeal the Court's order denying his motion to dismiss. (Doc. 95 at 2, ¶ 3). The government also agreed to move to dismiss Counts I and III of the indictment against him in the instant case and to dismiss all charges pending against him in CR 17-18-H. *Id.* On February 12, 2018, Judge Haddon dismissed the indictment and superseding indictment filed in CR 17-18-H as to Jablonsky without prejudice. (Doc. 222 in CR 17-18-H).

/ / /

In March of 2018, Judge Haddon sentenced Ceynar to a $10,000 fine and forfeiture of his mountain lion mount. (Doc. 233 in CR 17-18-H). Judge Haddon sentenced Day to six months in prison to be served concurrently with a sentence imposed in state court, followed by three years of supervised release on April 3, 2018. (Doc. 240 in CR 17-18-H). On June 13, 2018, Judge Haddon sentenced Theule to one year unsupervised probation and a fine of $3,000. (Doc. 251 in CR 17-18-H).

The undersigned conducted a sentencing hearing for both defendants in the instant case on June 7, 2018. Perlewitz, like Jablonsky and the defendants in CR 17-18-H, negotiated a plea agreement with the United States. The terms of his agreement allowed him to enter a guilty plea to a superseding information charging him with a Class A misdemeanor. (Doc. 116). The undersigned sentenced Perlewitz to two years unsupervised probation, a fine of $5,000, and forfeiture of his illegally taken mountain lion. (Doc. 144).

Jablonsky, through his counsel, raised seven separate objections to the pre-sentence report. During the June 7, 2018, sentencing hearing,[1] Jablonsky's counsel explained that a number of the objections were clarifications and

---

[1] The hearing began as scheduled, at 10:00 a.m., but did not conclude until almost 4:30 p.m., requiring the Court to take a lunch recess and a brief afternoon recess, to reschedule an appointment. *(See* Doc. 140, Minute Entry, and Doc. 158, Tr.)

Page 5 of 11

explained that he intended to present evidence as to the most substantial objections. Jablonsky's counsel argued that the government could not present witness testimony to support its position because the government failed to provide a witness list prior to the hearing, a position that was not supported by the Court's order setting the hearing.

The United States called Chad Murphy, a criminal investigator and game warden with Montana Fish, Wildlife, and Parks with 29 years experience, who investigated the charges that led to the filing of the indictment in the instant case and in CR 17-18-H. The Court also heard testimony from Jablonsky. At the conclusion of the evidence, the Court overruled all of Jablonsky's objections to the pre-sentence investigation report and made the following findings as to Jablonsky's guideline calculations:

| | |
|---|---|
| TOTAL OFFENSE LEVEL: | 10 |
| CRIMINAL HISTORY: | I |
| MAXIMUM CUSTODY: | 5 years |
| GUIDELINES CUSTODY RANGE: | 6-12 months |
| GUIDELINES PROBATION RANGE: | 1-5 years |
| FINE RANGE: | $4,000 to $40,000 |

(*See* Doc. 158 at 134, ll 3 - 11).

During the allocation phase of the sentencing hearing, the Court heard testimony from Jablonsky's wife, and also heard from Jablonsky himself. Jablonsky's counsel, Mr. Sherwood[2] asked the Court to vary downward from the advisory guideline range of six to twelve months incarceration and impose a probationary term of two years. Mr. Sherwood continued to insist, in the face of the Court's ruling on his objections, that the Court should not consider any of the conduct alleged against his client in CR 17-18-H, claiming that those charges were "ludicrous." (Doc. 158 at 149, l 14 through 154, l 13).

Counsel for the United States asked for a sentence of imprisonment within the advisory guideline range of six to twelve months, followed by a term of supervised release of three years, with a special condition preventing Jablonsky from engaging in outfitting, guiding, hunting or accompanying others engaged in those activities during the period of supervision. (Doc. 158 at 158, ll 8 - 14).

The Court agreed with the government that Jablonsky should be held responsible for the conduct charged against him in CR 17-18-H. The Court also viewed Jablonsky as the ring-leader of the two charged conspiracies, after hearing the evidence and reviewing the pre-sentence investigations report.

---

[2] The Court notes that Mr. Sherwood is still listed as Jablonsky's counsel of record, although the most recent motion was filed and briefed by Tyler Moss of the O'Neill law office, who is apparently acting as Mr. Sherwood's co-counsel.

The undersigned's decision to grant a downward variance was not based on the arguments made by Jablonsky's counsel. Indeed, the Court seriously considered refusing to follow the probation officer's recommendation and reduce Jablonsky's offense level by two levels for acceptance of responsibility, given Jablonsky's failure to acknowledge his responsibility for all of his relevant conduct.

The Court was moved by the testimony of Mrs. Jablonsky and sentenced Jablonsky to four years probation, rather than sentencing him to a term in prison, based on Mrs. Jablonsky's testimony concerning his family ties and responsibilities. The Court's decision was also based, in part, on the recommendation made by the United States Probation Office. (Doc. 147 at 3).

Jablonsky appealed the Court's order denying his motion to dismiss Count II of the indictment. (Doc. 152).[3] The Court's order was affirmed by the Ninth Circuit. (Doc. 164).

**LEGAL STANDARD**

The parties agree that "the standard applicable to the early termination of probation is the same as that for the early termination of supervised release."

---

[3] The Notice of Appeal was filed by Deputy Federal Defender Michael Donahoe, who was appointed to replace Mr. Sherwood, as the Federal Defender's Office no longer had a conflict, once their representation of Day in CR 17-18-H ended.

(Doc. 186 at 4). This Court has "broad discretion" when deciding "whether to grant a motion to terminate" probation *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014). The Court may grant early termination if "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice" based on its consideration of the factors set forth in sections 3553(a)(1), (a)(2)(B - D), and (a)(4 - 7). 18 U.S.C. § 3583(e)(1). Jablonsky, "as the party receiving the benefit of early termination," bears the burden of demonstrating that early termination should be granted. *United States v. Weber*, 451 Fed. 3d 552, 559, n. 9 (9th Cir. 2006).

**ANALYSIS**

A motion for early termination is directed to the sentencing judge because the sentencing judge has already considered all of the relevant sentencing factors in deciding to impose its original sentence. As explained above, the Court was not persuaded by Jablonsky's argument that the December 2013 hunt that led to the charges in the instant case was not originally planned as a professional hunt. Nor was the Court persuaded by Jablonsky's argument that it should not consider the conduct charged in CR 17-18-H in imposing sentence in this case.

The evidence presented by the United States at the sentencing hearing and the information in the pre-sentence investigation report reveal Jablonsky for what

he is -- someone who chooses to flout both state and federal gaming laws. Had the Court believed that a probationary sentence of less than four years was sufficient to reflect the seriousness of Jablonsky's offense, promote respect for the law, provide just punishment for his offense, afford adequate deterrence and protect the public from further crimes, the Court would have imposed a lesser sentence.

The fact that Jablonsky has not violated the conditions imposed by the Court in the twenty-nine months since he was sentenced is not sufficient in and of itself to convince the Court that he is entitled to early termination. As the United States correctly points out, every defendant sentenced to probation is expected to comply with the conditions of probation. Jablonsky has failed to meet his burden of establishing that his circumstances have changed sufficiently to warrant early termination. *See United States v. Miller*, 205 F.3d 1098, 1101 (9th Cir. 2000)(reversing and remanding a district court's denial of a motion for fine modification because the defendant had alleged "a type of changed circumstance that, if true, may justify judicial modification of a defendant's supervised release.").

**CONCLUSION**

Having carefully reviewed the arguments of both parties and having considered all of the relevant factors, the Court has determined that granting

Jablonsky's request for early termination of probation would not serve the interests of justice, particularly given that Jablonsky already benefitted from the Court's downward variance to his advisory guideline range. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Jablonsky's motion for early termination of probation (Doc. 185) is **DENIED**.

Done and dated this 10th day of November, 2020.

CHARLES C. LOVELL
SENIOR US DISTRICT JUDGE